[Crim. No. 11552. Third Dist. May 19, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY BENJAMIN BISHOP, Defendant and Appellant.

718

COUNSEL

Jeffrey J. Gale, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Lisa Lewis Dubois and Carla J. Caruso, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**REGAN, Acting P. J.**—Rodney Benjamin Bishop was convicted by a jury of forcible rape (Pen. Code, § 261, subds. (2) and (3)), and out of the presence of the jury he admitted three prior felony convictions.[1] On

---

[1]The prior convictions were for robbery (Pen. Code, § 211), burglary (Pen. Code, § 459) and escape. (Pen. Code, § 4532, subd. (b).)

appeal he contends: (1) it was error to permit use of his prior felony burglary conviction for impeachment purposes; (2) it was error to deny his requested instruction on voluntary intoxication as a defense; (3) the sustaining of the prosecution's hearsay objections requires reversal; and (4) cumulative error was prejudicial even if singly each of the foregoing errors were not.

On the evening of January 28, 1981, Cheryl, Janice, Cindy and Mike went to a neighborhood bar where Cheryl met defendant. The two conversed as defendant played pool and she eventually gave him her telephone number. About 1 a.m., Cheryl, Cindy, defendant and one Billy Baker left in Cheryl's car. They stopped at a market where defendant purchased a six-pack of beer and then proceeded to Mike's residence where they met Janice, Mike and a third individual. The foursome left Mike's, drove around for awhile and about 3 a.m., Cheryl decided she wanted to go home. Cindy and Baker were taken home, then defendant told Cheryl he had one more stop to make. As he drove he told her he loved her and he wanted "to get down with [her]." Repeatedly, Cheryl told defendant to take her home but he refused and became angry. He pulled into the parking lot of a shoe store; she grabbed the keys but was unable to get away from him. He seemed to calm down and said that if she would take him home he would jump-start his car then follow her home to be sure she arrived safely. She agreed.

At defendant's residence he stated he had to use the bathroom and invited her inside. Once inside, defendant threw her to the floor and began kissing and undressing her. She ran for the door when he started to unzip his pants but he caught her and told her to be quiet because "it was going to happen anyway." Against Cheryl's wishes he removed her clothes, orally copulated and raped her. He then forced her to copulate him and had another act of sexual intercourse.

Defendant had an arrangement with his neighbors who shared the adjoining duplex that each would watch out for the other's residence. Should either hear any unusual sounds they would knock on the wall and await a prearranged response. The neighbors heard the sounds of defendant and Cheryl, knocked on the wall and when no response was forthcoming they called the sheriff's department.

The officers arrived at the front door of defendant's residence where they heard Cheryl call, "Help, he's raping me." As one officer opened the door, Cheryl ran past him clad only in a boot and stocking. Defen-

dant, who was nude, attempted to follow but was restrained by one of the officers. As defendant was being placed under arrest for rape he denied the accusation, stating, "No, man. She just came to my door and asked if I would give her twenty dollars to make love to her."

Cheryl was examined at a hospital by Dr. William Green. He observed two bruises on her neck, a small scratch on her upper lip and a tiny scratch on one finger. He noted an absence of motile sperm.

The defense was consent; defendant testified Cheryl willingly acceded to his advances, but once intercourse was commenced she became frightened and wanted to go home. She left the bedroom and he heard her say, "He's raping me." Defendant admitted telling the officers Cheryl had come to the door requesting $20 to make love, but insisted he did so because he was scared.

Defendant initially urges it was error to permit evidence of his 1976 felony burglary conviction to be brought to the jury's attention in order to impeach his credibility. His argument is twofold: first he predicates error upon the claim burglary without proof of intent does not necessarily show dishonesty. Second, he contends the court did not engage in balancing the probative value of the evidence against its potential prejudicial effect. (Evid. Code, § 352; *People v. Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].)

Evidence Code section 788 permits impeachment of credibility by proof of prior felony conviction. Case law limits the felonies which may be used to those which involve dishonesty. (*People v. Spearman* (1979) 25 Cal.3d 107, 114 [157 Cal.Rptr. 883, 599 P.2d 74].) Defendant claims the prosecution failed to meet its burden of proving his burglary involved a dishonest act. He relies on *People v. Keating* (1981) 118 Cal.App.3d 172 [173 Cal.Rptr. 286], and *People v. McCullough* (1979) 100 Cal.App.3d 169 [160 Cal.Rptr. 831], which hold the proponent of the evidence of a prior burglary conviction has the burden of proving it involves theft. His reliance is misplaced. The better reasoned authorities hold the burden is upon defendant to demonstrate his prior conviction of burglary did not involve theft. (See *People v. Lescallet* (1981) 123 Cal.App.3d 487, 493 [176 Cal.Rptr. 687]; *People v. Benton* (1979) 100 Cal.App.3d 92, 97 [161 Cal.Rptr. 12]; and *People v. Stewart* (1973) 34 Cal.App.3d 244, 247-248 [109 Cal.Rptr. 826], disapproved on other grounds in *People v. Rist* (1976) 16 Cal.3d 211, 221 [127 Cal.Rptr. 457, 545 P.2d 833].) Further, defendant's counsel,

while arguing for exclusion, admitted both the robbery and the burglary were "concerned with dishonest behavior." Hence, the court's ruling was appropriate.

■ Defendant's contention the court failed to engage in balancing the potential prejudice against the probative value in permitting his impeachment by his 1976 burglary conviction (Evid. Code, § 352; *People v. Beagle, supra*, 6 Cal.3d 441) is contradicted by the record. At the hearing on the motion to exclude defendant's prior convictions for impeachment purposes the attorney argued the remoteness of the priors, whether or not they would keep defendant from testifying, their similarity to the instant offenses charged, and their bearing on defendant's veracity. The court voiced its concern over which, if any of the convictions, it should permit the prosecution to use. Finally, the court determined the prior burglary was admissible; however, the robbery was not. This adequately demonstrates the court made a considered determination of this issue.

■ Defendant next contends it was error to refuse to give his requested instruction on voluntary intoxication as a defense to rape.[2] His supporting argument is that due to intoxication his ability to determine whether or not Cheryl consented to the sexual intercourse was reduced. Rape is not a specific intent crime and this very argument was determined adversely to defendant in *People v. Guthreau* (1980) 102 Cal.App.3d 436 [162 Cal.Rptr. 376] and in *People v. Potter* (1978) 77 Cal.App.3d 45 [143 Cal.Rptr. 379]. We have no intention of departing from these decisions.

■ He also contends the court improperly sustained two hearsay objections. First, defense counsel sought to have one of defendant's friends, Eddie Anderson, testify that the morning following the incidents, Cheryl came into a bar and told of the rape. Anderson stated, "[Y]ou cannot rape the willing." Cheryl did not reply. Counsel argued her silence constituted an adoptive admission. Aside from the fact adoptive admissions apply only to parties (Evid. Code, § 1221), and Cheryl is not a party in this action, her silence still cannot be construed as an adoptive admission. She had already stated she had been raped; it was not necessary that she get in the last word in a futile argument with one of defendant's friends.

[2]Defendant requested CALJIC No. 4.25 be given.

■ Defendant's counsel also attempted to elicit from defendant the content of the conversation being carried on between defendant and Cheryl as all four persons in Cheryl's car drove around. The prosecution entered an objection based upon hearsay, which was sustained by the court. Because the content of the conversation was offered for the purpose of showing that the relationship between Cheryl and defendant was friendly rather than for the truth of the matters asserted (Evid. Code, § 1200), the conversation was not hearsay. The friendly nature of the relationship between defendant and Cheryl prior to their two companions being let out of Cheryl's automobile was never in question. Thus the error could not conceivably have contributed to the verdict. (See *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

Defendant claims even if none of the foregoing alleged errors is sufficient to warrant reversal, their cumulative effect does so require. Since we have determined the only error was the innocuous sustaining of the prosecution's hearsay objection relating to the conversation in the car, we reject this final contention.

The judgment is affirmed.

Evans, J., and Sparks, J., concurred.