[No. B222367. Second Dist., Div. Four. July 6, 2011.]

DEBORAH KINCAID, Plaintiff and Appellant, v.
JEFFREY KINCAID, Defendant and Respondent.

## COUNSEL

The Mathews Law Group, Charles T. Mathews and Louisa Okonyan for Plaintiff and Appellant.

Neil B. Quinn; Dunn & Sanderson and Philip R. Dunn for Defendant and Respondent.

## OPINION

**EPSTEIN, P. J.**—Appellant Deborah Kincaid sued her former husband, respondent Jeffrey Kincaid, for the wrongful death of her daughter, his stepdaughter, Shannon Ellen Siebert (Shannon). Appellant alleged that Shannon committed suicide as a result of sexual abuse and torture by respondent for over 13 years. Respondent filed a motion for summary judgment, presenting evidence that the alleged acts did not occur and arguing that appellant did not offer admissible evidence creating a triable issue of material fact. The trial court sustained respondent's evidentiary objections to appellant's opposition and granted the summary judgment motion. We agree that respondent carried his initial burden of proof on summary judgment. Appellant also argues the trial court erred in ruling her evidence inadmissible. We agree in part, finding that the transcript of a recorded telephone conversation between appellant and respondent was admissible as a party admission. We find no error in any of the other evidentiary rulings. If properly admitted, evidence of the recorded conversation creates a triable issue of fact as to whether the alleged misconduct occurred. Thus, the court's order granting summary judgment is reversed.[1]

## FACTUAL AND PROCEDURAL SUMMARY

Appellant is the mother of Shannon, who was born in January 1980. Appellant married respondent in May 1991, when Shannon was 11 years old. Appellant alleges that shortly after their marriage, respondent began torturing, molesting and raping Shannon. The torture included, but was not limited to, suffocating her with a plastic bag over her head, choking her with his hands, intentionally burning her skin with lighted cigarettes, and forcibly binding

---

[1] Noting an unbriefed issue about causation, we asked the parties to brief whether there was sufficient evidence to establish legal causation between the alleged abuse and the decedent's suicide. They have done so. Nonetheless, we conclude that it is premature to rule on that issue. Although respondent raised the issue of causation in his demurrer, his motion for summary judgment rested entirely on a claim of lack of evidence that the alleged abuse actually occurred. Causation was not discussed, and appellant cannot be faulted for not providing evidence on an issue which was not a basis for the grant of summary judgment.

her. In order to prevent Shannon from disclosing his actions, respondent threatened physical, financial, and emotional harm to her and appellant. Appellant alleges that Shannon was a happy and academically successful young girl, but as a result of respondent's actions, she developed severe emotional problems and suffered from substance abuse, including alcohol and opiate dependence. She was in various detoxification and rehabilitation centers and under the care of a number of psychiatric physicians and psychologists.

In September 2005, Shannon disclosed appellant's conduct to her therapist, Dr. Ronald Sharpshair, then to appellant. After being encouraged to do so, Shannon reported it to law enforcement in October 2005, which led to respondent's arrest. Shannon claimed that she kept articles of clothing and bedding with respondent's semen. She also claimed there was semen on the linoleum floor of her trailer home. The articles and the trailer were examined by the County of Ventura Sheriff's Forensic Sciences Laboratory but no semen was detected. The prosecution against respondent did not go forward due to insufficient evidence.

In the early morning of February 1, 2008, Shannon's body was found on the ground outside of appellant's apartment complex. The autopsy report concluded Shannon had committed suicide by jumping off the roof of the complex. The night before, Shannon had spoken to appellant about taking her own life. She struggled with depression, had suicidal ideations, and attempted to overdose approximately a year earlier.

In October 2008, appellant brought a wrongful death and a personal injury survivor cause of action against respondent and 20 Doe defendants. Respondent is the only defendant in this appeal. For the wrongful death action, appellant alleged that respondent's torture and sexual abuse of the decedent "caused, resulted in, and were a substantial factor of, her death." Appellant sought economic, noneconomic and punitive damages. Respondent demurred to both causes of action. As to the wrongful death claim, respondent demurred on statute of limitations and causation grounds. The trial court sustained the demurrer with leave to amend as to the survivor action but overruled the demurrer to the wrongful death action.[2] Respondent then filed an answer to appellant's complaint, denying the allegations of sexual abuse and torture. The survivor action was subsequently dismissed and only the wrongful death action is subject to this appeal.

Respondent moved for summary judgment on the wrongful death claim, which was based on hearsay evidence that he had sexually abused and

---

[2] On April 7, 2011, respondent moved to augment the record to include his demurrer and appellant's opposition to the demurrer. We reviewed the motion and grant his request.

tortured Shannon. In support of his motion, respondent submitted evidence of negative DNA results and his own deposition denying the allegations. Respondent also argued that appellant has no admissible evidence that respondent committed the alleged torturous acts. In connection with this argument, he asserted that any accusations made by Shannon starting in 2005 were untrustworthy because she had a motive to lie, harbored a bias against respondent, and had a dishonest character. To support this assertion, respondent submitted evidence of Shannon's disdain over respondent's parenting style, depositions of former acquaintances of the decedent, and her criminal history.

Appellant's evidence in opposition to the motion included transcripts of a tape-recorded telephone conversation between herself and respondent, an alleged suicide note written by Shannon, Shannon's October 2005 statement to police, and records of her treatment by Dr. Sharpshair. Respondent filed evidentiary objections to all of these documents. The trial court sustained the objections and granted his motion for summary judgment, finding: "[Respondent] has offered evidence that he did not commit any of the acts of which he is accused. . . . [¶] [Respondent] has demonstrated that there are no witnesses with personal knowledge, no physical evidence and no corroborating direct evidence to support [appellant's] allegations. . . . [¶] All objections to evidence are sustained. [¶] [Appellant] lacks admissible evidence sufficient to demonstrate the existence of a triable material fact. Without evidence that [respondent] raped and tortured [decedent] for years, resulting in [decedent's] suicide, [appellant] will be unable to establish her wrongful death Cause of Action." The court entered summary judgment for respondent and this timely appeal followed.

## DISCUSSION

## I

Respondent argues that appellant's action for wrongful death is barred by the statute of limitations. We do not agree.

Code of Civil Procedure section 335.1 provides: "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another." A cause of action for wrongful death is an entirely new and independent cause of action created in the heirs or personal representatives of the deceased, distinct from any action the deceased might have maintained if he or she had survived. (See *Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 819 [31 Cal.Rptr.3d 591, 115 P.3d 1233].) Accordingly, the statute of limitations on a wrongful death action begins to run at the time of death, and not at the time of injury which caused

the death, for it is only on the date of death that the action is complete in all of its elements. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 404 [87 Cal.Rptr.2d 453, 981 P.2d 79].)

Respondent contends that appellant stands in the shoes of the decedent, and cannot proceed with a wrongful death action if the deceased would not have prevailed on a tort action for the underlying injury had she survived. He argues that because Shannon did not bring a timely tort action for the alleged abuse or torture, her action was barred by the statute of limitations, and therefore, appellant's wrongful death claim also is barred. Respondent cites *Argonaut Ins. Co. v. Superior Court* (1985) 164 Cal.App.3d 320 [210 Cal.Rptr 417] (*Argonaut*), in support of his argument. In that case, the deceased suffered a back injury. After a hearing on a workers' compensation claim, the Workers' Compensation Appeals Board (WCAB) ordered the compensation insurance carrier to provide lifetime medical care for the deceased. Years later, she experienced increased back pain and requested surgery, but the carrier did not immediately comply. (*Id.* at p. 323.) She ultimately committed suicide. Her widower and children brought a wrongful death action against the carrier. The carrier demurred, arguing the matter should be decided under workers' compensation law. The demurrer was overruled and the appellate court overturned the denial, finding that had the deceased survived, she would have had to submit to the exclusive jurisdiction of the WCAB and could not have brought a tort action against the carrier. The Court of Appeal held that because the widower and children stood in the shoes of the deceased, their wrongful death action was barred for the same reason. (*Id.* at p. 324.)

However, in *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 287 [87 Cal.Rptr.2d 222, 980 P.2d 927], the Supreme Court held: "[N]o 'absolute' rule allows a wrongful death defendant to assert any defense that would have been available against the decedent. In the case of a statutory defense, the court must consider the language and intent of the enactment as well as the original and distinct nature of a wrongful death action." Respondent provides no authority that extends *Argonaut, supra,* 164 Cal.App.3d 320, to the statute of limitations. The case law states the statute of limitations for wrongful death actions and respondent presents no authority opposing this established law. Here, appellant timely filed the wrongful death claim eight months after the decedent's suicide.

## II

We turn to respondent's motion for summary judgment. We review the ruling on a motion for summary judgment de novo (*Reliance Nat. Indemnity Co. v. General Star Indemnity Co.* (1999) 72 Cal.App.4th 1063, 1074 [85 Cal.Rptr.2d 627]), viewing the evidence and inferences in the light most

favorable to the opposing party (see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493]). In a summary judgment motion, the burden of production is on the moving party to make a prima facie showing there is no triable issue of material fact and that the party is entitled to judgment as a matter of law. (*Id.* at p. 850.) If the moving party does so, the burden shifts to the opposing party to produce "substantial responsive evidence" showing some triable issue of material fact. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 [80 Cal.Rptr.2d 66].) If the opposing party is unable to do so, the moving party is entitled to judgment as a matter of law. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 780–781 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

A defendant seeking summary judgment meets his or her burden of proof by showing that the plaintiff cannot establish at least one element of the cause of action. (Code Civ. Proc., § 437c, subd. (*o*)(2).) The moving party must meet its burden by producing "affidavits, declarations, admissions," or other competent evidence. (Code Civ. Proc., § 437c, subd. (b)(1); see also *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 720 [34 Cal.Rptr.2d 898, 882 P.2d 894] [neither party may rely on its own pleadings as evidence to support or oppose a motion for summary judgment].)

Here, appellant argues respondent failed to carry his initial burden of proof because he merely stated that appellant did not have admissible evidence and only provided irrelevant undisputed facts. We do not agree. Along with his showing that appellant offered no admissible evidence to prove the alleged misconduct occurred and presenting facts to support his claim that the decedent's accusations were untrustworthy, respondent also submitted affirmative evidence that he did not abuse decedent: the negative DNA results and his own deposition denying the allegations. As appellant clearly cannot prevail on a wrongful death claim without proving that the alleged abuse occurred, respondent carried his initial burden of proof, thereby shifting the burden onto appellant to provide admissible evidence showing a triable issue of material fact.

## III

Appellant next argues the court made several erroneous evidentiary rulings. Evidence submitted for or against a motion for summary judgment must be admissible if being offered at trial. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's evidentiary rulings on summary judgment for abuse of discretion. (See *Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335 [115 Cal.Rptr.3d 538] [" 'Although it is often said that an appellate court reviews a summary judgment motion "de novo," the

weight of authority holds that an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard. [Citations.]' "].)

Appellant offered evidence of the acts of misconduct she alleged, including a recorded telephone conversation between herself and respondent in which she confronted him with the decedent's allegations. Respondent objected to this evidence on hearsay, lack of personal knowledge, and authentication grounds. Appellant argues the court erred because the conversation constituted direct and adoptive admissions by a party opponent, and, as such, was admissible under Evidence Code sections 1220 and 1221, respectively.[3] We agree.

██ " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (§ 1200, subd. (a).) An established exception to the hearsay rule is an admission by a party opponent. Section 1220 provides: "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity." Section 1221 defines an adoptive admission as a statement "of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth." For the adoptive admission exception to apply, it is sufficient that the evidence supports a reasonable inference that an accusatory statement was made under circumstances affording a fair opportunity to deny the accusation; whether a defendant's conduct actually constituted an adoptive admission becomes a question for the jury to decide. (*People v. Zavala* (2008) 168 Cal.App.4th 772, 779 [85 Cal.Rptr.3d 734].) ██ The record demonstrates that there was sufficient evidence to sustain a finding that respondent adopted appellant's accusations during their telephone conversation. Thus, we find the court erred in barring the conversation transcript.

On October 28, 2005, police recorded a telephone conversation between respondent and appellant.[4] Appellant asked respondent how he could hurt Shannon, to which he responded, "I don't know. I don't know." When asked why he abused Shannon, he replied: "I don't know. I don't remember. [inaudible] they can't make it up." Appellant said the allegations were true, to which respondent answered: "You might be right. I'm beginning to believe that you're right. I—I can't make sense of it." He maintained that he did not remember abusing Shannon and that it would be a lie to say he remembered doing so. He then stated: "Okay, then can't we go to the counselor to figure

---

[3] All further statutory references are to the Evidence Code, unless otherwise indicated.

[4] The conversation was lengthy and we only highlight relevant portions.

out why . . . if that's what both of you believe, I'll have to believe it. I'll have to believe it. . . ." "[Y]ou don't think it's possible that I could . . . have blocked that out . . . ."

Appellant then demanded he admit to having sex with the decedent. He responded: "I could make something up or I could tell you that I don't know and that I need help. . . . My god, don't push me into lying." Respondent then asked if the decedent would give him more details to spark his memory. Appellant again asked him if he had had sex with the decedent, to which he responded: "I must have. I must have. It sounds logical. It explains a lot. That's what I was thinking about last night. It does explain a lot." Appellant asked once more and respondent answered: "I can't say anything other than I must have." Respondent continued by stating that it was important to make it up to the decedent but doubted that "[a]fter all of that, that she would let me." He asked if he could take a lie detector test to figure out what had happened and said he wished he could remember details.

When read together, it is clear that respondent consistently reacted to the accusations in a manner that a reasonable person would not have done if the accusations were untrue. Respondent denied recollecting the incidents and refuted appellant's assertion that he was lying about not remembering the details.

Although respondent denied knowledge or memory of the abuse, he never denied the allegations themselves. When asked if he was denying the allegations, he answered: "No, I'm not denying. I'm just telling you that I don't . . . remember specifics." A jury could have found that a reasonable person, when confronted with accusations of sexual abuse of his stepdaughter over an extended period of time, would do more than simply say that he did not remember or might have mentally blocked it out.

Respondent argues his statements were not adoptive admissions because he had denied the accusations prior to the October 28 telephone call. The record shows that the day before, on October 27, police recorded a telephone conversation between respondent and Shannon in which Shannon first confronted appellant with the accusations of abuse. Respondent denied having sex with her and said he did not know what she was talking about. He denied making threats and said he could not admit to something that was not true. He concluded by stating that "anything is possible" and that if her allegations were true he needed to get help. On October 28, the police recorded another conversation between appellant and respondent, hours before the conversation we first recounted took place. In this first conversation, respondent said that he could not fathom the alleged abuse occurring and that if the accusations were true then he must have a split personality and needed help. Respondent

expressed a desire to find out whether or not the accusations were true, including undergoing hypnosis, but said he could not say something that he did not believe was true. He conceded he was not denying the possibility of the abuse, but that he found it hard to believe the abuse occurred.

Respondent denied the accusations when confronted by Shannon. But the first telephone conversation with appellant contains statements similar to those in the second; statements that are not clear denials and which could support a finding that respondent adopted appellant's accusations.

In any event, previous denials are not determinative when evaluating the admissibility of the statements at issue. Respondent cites *People v. Bishop* (1982) 132 Cal.App.3d 717 [183 Cal.Rptr. 414], as authority to the contrary. In that case, the defendant was charged with rape of the victim. At trial, his attorney sought to introduce a conversation between the victim and the defendant's friend that occurred the day after the alleged incident. The victim disclosed what had occurred, to which the friend stated: " '[Y]ou cannot rape the willing.' " (*Id.* at p. 722.) The victim did not reply. The trial court sustained the prosecutor's hearsay objection and the defendant was convicted. On appeal, the defendant argued that the court erred in not admitting victim's silence as an adoptive admission. The appellate court disagreed, holding: "Aside from the fact adoptive admissions apply only to parties . . . , and [the victim] is not a party in this action, her silence still cannot be construed as an adoptive admission. She had already stated she had been raped; it was not necessary that she get in the last word in a futile argument with one of defendant's friends." (*Ibid.*, citation omitted.)

Respondent argues that, similarly, he denied the accusations on multiple occasions and that restating his denials during the second conversation with appellant would have been futile in light of her persistent accusations. But he did not simply remain silent in the face of accusations. Rather, he affirmatively stated that he was not denying them, but that he could not remember the details. He ultimately admitted that the accusations must be true, though maintaining that he lacked memory of the events. Furthermore, unlike *People v. Bishop, supra*, 132 Cal.App.3d 717, where the adoptive admission proffered against the defendant concerned a single statement made by the defendant's friend, here, respondent had ample opportunity to respond to appellant's continuous accusations throughout a lengthy conversation. His denials are a factor for the jury to consider when determining whether respondent actually abused Shannon; his denials do not bar a finding that he adopted appellant's accusations as the truth.

There also were several affirmative statements admissible as direct admissions by a party opponent. At one point in the conversation, appellant

demanded that respondent confess, otherwise she would not return home. Respondent answered: "Okay, I was having sex with [decedent]." He continued by conceding: "I must have, I must have . . . I accept that—that you believe and that she believes it and I can't recall. Therefore, it must have happened." He later stated: "For all of . . . what I have been confronted with, I had to have done it. I had to have done it." Respondent contends these statements were made simply to placate appellant and persuade her to return home, and thus, they do not constitute admissions of guilt. However, this is precisely the sort of factual dispute and credibility issue to be decided by a jury or the court at trial, and not by the trial court on summary judgment.

Because the trial court did not explain its evidentiary rulings, we also discuss respondent's personal knowledge and authentication objections. Respondent contends that he consistently denied memory or knowledge of abusing decedent, and therefore, he lacked personal knowledge on the matter and his statements were inadmissible under section 702.[5] We do not agree. Respondent's reactions to appellant's accusations were offered as evidence that, under the circumstances, he directly or indirectly admitted the alleged conduct. The personal knowledge requirement does not apply to an evaluation of the manner in which a defendant responds to accusations. Otherwise, whenever a defendant responds that he does not know if and why he committed a certain act, he could raise section 702 to bar his own admissions or adoptive admissions. Respondent presents no authority for that proposition.

Finally, respondent objected to submission of the transcript of his statements on authentication grounds. However, in his own reply to appellant's motion for summary judgment, respondent provided the transcript for both recorded conversations between himself and appellant, as well as a signed declaration by the Ventura County Sheriff's Office's custodian of records. Respondent does not reassert the authentication objection on appeal, and we conclude that the transcript at issue was properly authenticated.

Thus, we find that the transcript is admissible and sufficient evidence to create a triable issue of material fact.

---

[5] Section 702 provides in pertinent part: "[T]he testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter. Against the objection of a party, such personal knowledge must be shown before the witness may testify concerning the matter."

# IV

Appellant argues that her remaining evidence also is admissible under established hearsay exceptions. Here, we do not agree.

First, appellant argues that an apparent suicide note written by Shannon was admissible as a dying declaration. Following her death, a note signed by Shannon was found on the dresser in her bedroom. The note read, in relevant part: " 'He Won' [¶] When on drugs it's not bad when sober I can't live with the fear (No one knows) What I go thru with my rapes memories I can't take it it's killing me I told u mom I want help to go back to DDTC u said in time I need to earn $ first, I love . . . but no one [k]nows my nightmares that asshole stole my life."

■ Section 1242 provides: "Evidence of a statement made by a dying person respecting the cause and circumstances of [her] death is not made inadmissible by the hearsay rule if the statement was made upon [her] personal knowledge and under a sense of immediately impending death." Underlying the exception is the notion that statements made by a person on the verge of death have a substantial guarantee of trustworthiness. (See *People v. Dallen* (1913) 21 Cal.App. 770, 781 [132 P. 1064] ["The very solemnity of the circumstances under which a declaration *in extremis* is made is very justly considered by the law as creating an obligation equal to that which is imposed by a positive oath in a court of justice."].) Though it is not necessary that death take place immediately or even soon after the statement is made (see *People v. Monterroso* (2004) 34 Cal.4th 743, 763 [22 Cal.Rptr.3d 1, 101 P.3d 956]), the statement must be made when the declarant has abandoned all expectation of living. (*People v. Gonzales* (1948) 87 Cal.App.2d 867, 878 [198 P.2d 81].)

■ Suicide declarations may be admissible as a defense to a homicide charge. (See *People v. Salcido* (1966) 246 Cal.App.2d 450, 461–462 [54 Cal.Rptr. 820].) However, here, appellant does not offer the suicide note to demonstrate the decedent's intent to commit suicide. Rather, she submits it to prove the truth of other statements in the note made in connection with the suicidal intent. Appellant offers no authority to support the contention that factual allegations made in a suicide note are admissible as dying declarations, and we find none. Although California courts have not resolved this issue,[6] other courts have ruled that suicide declarations are not covered by their jurisdictions' respective dying declaration exceptions. Those courts have held that a statement made prior to the commission of suicide is not made in

[6] In *People v. Adams* (1990) 216 Cal.App.3d 1431, 1434 [265 Cal.Rptr. 568], the defendant shot the victim in the defendant's home. The victim was placed on life support but was informed by his surgeon that he believed it would only prolong the victim's life by days or

the face of impending death because the declarant controls if and when he or she is to die. (See *Garza v. Delta Tau Fraternity National* (La. 2006) 948 So.2d 84, 94–95 (*Garza*).) In *Garza*, the Louisiana Supreme Court noted that "[w]hen . . . the deadly trauma . . . was inflicted subsequent to the declaration, the mortality of an injury could not have been understood or realized by the decedent. . . . The realization of immediate death must be present when the statement is made. The likelihood of death, the awareness of eventual death, or the intention to eventually inflict death on one's self is not enough to place the declarant in the elevated sense of solemnity envisioned by the jurisprudence or the relevant codal provision." (*Ibid.*, citation omitted; see also *U.S. v. Angleton* (S.D.Tex. 2003) 269 F.Supp.2d 878, 885 ["The aspect of control involved in an intended death clearly diminishes the spontaneity that is a critical part of the dying declaration exception."]; but see *State v. Satterfield* (1995) 193 W.Va. 503 [457 S.E.2d 440] [suicide note admissible as dying declaration when evidence showed declarant committed suicide soon after writing note].)

Similarly, courts have found that the presumption that one tells the truth in his or her final moments is not as applicable when it is death by suicide. The *Garza* court held: "The control a declarant has over her fate distinguishes a suicide note from the true dying declaration, which the courts have elevated to the level of sworn testimony in the eyes of the law. . . . A person intent on committing suicide retains the ability to draft a statement to her liking, defeating the assumed truthfulness the law attributes to true dying declarations when all cause for untruthfulness is presumed to have been eliminated by impending death. The motivation of one penning a suicide note differs from the motivation of someone unexpectedly facing imminent death." (*Garza, supra*, 948 So.2d at p. 95, citation omitted; see also *State v. Hodge* (Mo.Ct.App. 1983) 655 S.W.2d 738, 743 ["The writer of a suicide note might have a motive to implicate another other than the truth. . . . A declarant who

weeks. (*Id.* at p. 1436.) The victim chose to forgo the life support, and subsequently made statements to police about the shooting. The statements were admitted at trial as his dying declarations and the defendant was convicted of first degree murder.

The defendant appealed, arguing that the victim's refusal of life support constituted an act of suicide and that his " 'suicide declarations' " were not admissible as dying declarations. (*People v. Adams, supra*, 216 Cal.App.3d at pp. 1439–1440.) The appellate court rejected the defendant's argument, holding that "the decision to forego living an existence sustained by artificial means is not tantamount to committing suicide." (*Id.* at p. 1440.) The court found that simply because the victim chose to die rather than proceed on life support did not render the statements untrustworthy. Rather, the court held "[t]he crucial element in determining whether a declaration is sufficiently trustworthy for admission under the dying declaration exception to the hearsay rule is the declarant's sense of impending death—not the precipitating cause of death." (*Ibid.*) We interpret the court's ruling to rely on a distinction between refusing life support and suicide, especially when the victim in that case was informed that life support would only slightly delay his inevitable death. To this extent the court's statement indicates a view that its reasoning applied to suicide, we do not agree.

has decided to commit suicide would have no fear, perhaps other than religious convictions . . . of punishment for . . . the falsity of the note."].) Here, the record shows that the decedent suffered from substance abuse problems, depression, and a history of criminal activity. She had a potential motive to portray herself in a more sympathetic light and to blame respondent, whom the evidence shows she disliked, for her situation.

■ Alternatively, appellant argues for the first time on appeal that the decedent's suicide note is admissible as a declaration against interest under section 1230. That statute requires the trial court to determine whether a statement is against the declarant's social interest. Here, the court did not have the opportunity to make such a determination because it was not asked to do so. Appellant forfeited her right to raise this hearsay exception. In any event, she does not prevail on the merits. Section 1230 provides in pertinent part: "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made . . . created such a risk of making [her] an object of hatred, ridicule, or social disgrace in the community, that a reasonable [person] in [her] position would not have made the statement unless [she] believed it to be true." In order for a statement to qualify under the exception, both the content of the statement and the fact that the statement was made must be against the declarant's social interest. (See *In re Weber* (1974) 11 Cal.3d 703, 722 [114 Cal.Rptr. 429, 523 P.2d 229].)

Appellant contends it was against Shannon's social interest to disclose that she was raped. She produces no evidence suggesting that the decedent's suicide note created a risk of hatred, ridicule, or social disgrace. Rather, such a statement may engender sympathy towards her situation which ultimately resulted in her passing. (See *People v. Lawley* (2002) 27 Cal.4th 102, 152, 155 [115 Cal.Rptr.2d 614, 38 P.3d 461] [prison inmate's hearsay statement that he was contracted by Aryan Brotherhood to kill victim was inadmissible when defendant presented no evidence that inmate's statement created a risk of social ridicule in prison community and when admitting to the murder may enhance inmate's reputation in prison].) Moreover, as we have stated, placing the responsibility for her situation on respondent may have also been in Shannon's self-interest, at least as she perceived it.

■ Appellant also contends that the allegations in the decedent's suicide note were admissible as evidence of her state of mind. Section 1250, subdivision (a)(2) makes admissible a hearsay statement expressing the declarant's then existing mental or physical state offered to prove or explain

the declarant's conduct. Appellant argues that decedent's statement "[h]e won" was admissible to demonstrate that Shannon thought respondent was the cause of her anguish and her ultimate act of suicide. However, what is at issue is whether there is any admissible evidence to prove that the alleged misconduct actually occurred. The state of mind exception does not apply to this purpose.

Finally, we consider the admissibility of the decedent's treatment records and statement to police, as appellant advances the same hearsay exceptions for both documents. Dr. Sharpshair, who was deposed on June 18, 2009, testified as to the contents of notes he took during a therapy session with decedent on September 8, 2005. According to his notes, Shannon disclosed that respondent had raped and sexually molested her since she was 13 years old, up until two weeks prior to the therapy session. She also said that respondent showed her a gun and threatened to kill her, her mother, or himself if she told anyone about the misconduct. Shannon also filed a police report on October 12, 2005, alleging respondent sexually abused her starting from when she was 13 years old. She alleged that her last sexual contact with respondent was in August 2005 when he forced her to orally copulate him.

Appellant first argues that Dr. Sharpshair's treatment records and the decedent's police statement are admissible under the business records and public records exceptions, sections 1271 and 1280, respectively. Each document contains multiple levels of hearsay and we first determine whether her underlying statements are admissible under any established hearsay exception before evaluating the recordation of those statements. Appellant argues that Shannon's statements to police and to Dr. Sharpshair are admissible under section 1370 as statements made by a physical abuse victim describing the infliction of physical injury. We do not agree.

Section 1370, subdivision (a), provides a hearsay exception if all the following conditions are met: "(1) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant. [¶] (2) The declarant is unavailable as a witness . . . . [¶] (3) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of statements made more than five years before the filing of the current action or proceeding shall be inadmissible under this section. [¶] (4) The statement was made under circumstances that would indicate its trustworthiness. [¶] (5) The statement was made in writing, was electronically recorded, or made to a physician, nurse, paramedic, or to a law enforcement official." When determining trustworthiness, courts consider, among other factors, whether the statement was made in contemplation of pending or

anticipated litigation in which the declarant was interested, whether the declarant has a bias or motive for fabricating the statement and the extent of such bias or motive, and whether the statement is corroborated by evidence other than other statements admissible under section 1370. (§ 1370, subd. (b).)

"At or near" the time of infliction denotes a time close to the infliction of the injury. (See *People v. Quitiquit* (2007) 155 Cal.App.4th 1 [65 Cal.Rptr.3d 674].) In *People v. Quitiquit*, the defendant and his wife (Villanueva) got into an argument on March 6, 2002. The following week, Villanueva went to the doctor complaining of numbness in her face and body. Her condition worsened and she visited the doctor several times. On April 14, she was admitted to a hospital where an MRI and X-ray showed a possible traumatic neck injury. (*Id.* at p. 4.) On April 24, roughly seven weeks after the injury occurred, Villanueva told her doctor and the police that the defendant had twisted her neck. (*Id.* at p. 5.) She subsequently died and the defendant was charged with murder and spousal abuse. Evidence of her statements was admitted and the defendant was convicted of voluntary manslaughter and inflicting great bodily injury on a spouse. (*Id.* at p. 7.)

On appeal, the defendant argued that Villanueva's statements were not admissible under section 1370 because they were not made "at or near" the time of the injury. Noting that no California decision had addressed the scope of the "at or near" requirement, the court held that the "plain meaning of the phrase 'at or near' denotes a time close to the infliction of the injury—which in most circumstances will be within hours or days, rather than weeks or months." (*People v. Quitiquit, supra*, 155 Cal.App.4th at p. 9, citing *Glatman v. Valverde* (2006) 146 Cal.App.4th 700, 704 [53 Cal.Rptr.3d 319] [forensic report of driver's blood-alcohol level, prepared one week after his blood was tested, was not made "at or near" the time of the blood test as required by public record exception, § 1280].) The court continued: "By imposing this requirement in addition to requiring that there be other indicia of the statements' trustworthiness . . . , the Legislature evinced its intent to limit the section 1370 hearsay exception to those statements made close in time to the infliction of the injury, to provide some assurance that the statements would relate to facts fresh in the declarant's mind and reduce the risk that the statements resulted from the declarant's prevarication or coaching by third parties." (*Quitiquit*, at pp. 9–10, citation omitted.) Turning to the legislative history of section 1370, the court noted that earlier versions of the proposed statute did not include the "at or near" requirement but instead provided that the infliction or threat of harm not be " 'remote' " from when

the statement was made. The bill was amended to include " 'at or near,' " as proposed by the Litigation Section of the California State Bar, so that there would be a " 'short time frame' between the making of the statement and the event to which it related." (*Quitiquit*, at p. 10, citing Sen. Amend. to Assem. Bill No. 2068 (1995–1996 Reg. Sess.) June 24, 1996, §1.) Noting that Villanueva had ample opportunities to disclose the injury to doctors and the police, the court concluded that absent special circumstances, a statement about a physical injury made almost two months after its infliction did not satisfy the statutory requirement. Thus, the trial court erred in admitting the statements under section 1370. (*Quitiquit*, at p. 10.)

Although creating a time restriction, the "at or near" requirement is not equivalent to the spontaneity requirement of section 1240.[7] (*People v. Pantoja* (2004) 122 Cal.App.4th 1, 11, fn. 4 [18 Cal.Rptr.3d 492].) Thus, we agree with the conclusion in *People v. Quitiquit, supra,* 155 Cal.App.4th 1, that whether a statement was made "at or near" the time of the infliction or threat of injury is based on the circumstances of the situation. Accordingly, we reject a rigid rule that the statement must come within hours or days of the injury or threat. Here, the decedent disclosed the most recent incident of sexual abuse to Dr. Sharpshair on September 8, two weeks after the abuse occurred and significantly closer in time than the seven-week gap in *People v. Quitiquit.* However, as in that case, there is evidence that the decedent had opportunities to disclose the most recent incident, or the entire history of abuse, prior to the September 8 session. The decedent began seeing Dr. Sharpshair on August 9, 2005, and had sessions with him on August 16, August 18, August 23, August 25, and September 1, 2005. It is unclear exactly when the incident occurred in relation to those sessions, but the record demonstrates she had at least one opportunity to disclose the most recent incident of abuse to Dr. Sharpshair. Absent expert opinion that a victim of sexual abuse needs multiple sessions with a therapist before disclosing an incident of that nature, we hold the trial court was within its discretion to find that the decedent's statements on September 8, 2005, were too remote from the alleged incident to be admissible under section 1370.

Finally, as to Dr. Sharpshair's treatment records, appellant argues that the decedent's statements were admissible as evidence of her state of mind. As explained above, the state of mind hearsay exception does not apply to statements offered to prove that the alleged abuse occurred.

---

[7] Section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

## DISPOSITION

The judgment following the order granting respondent's motion for summary judgment is reversed. Appellant to have her costs on appeal.

Willhite, J., and Suzukawa, J., concurred.

A petition for a rehearing was denied July 26, 2011, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied September 28, 2011, S195543.