Filed 3/27/14  Barron v. National Mentor Healthcare CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BARBARA BARRON et al., | D063482 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-00093906-CU-WT-CTL) |
| NATIONAL MENTOR HEALTHCARE, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

A. David Mongan for Plaintiffs and Appellants.

Downey Brand, Daniel J. Coyle and Shaye Schrick for Defendants and Respondents.

INTRODUCTION

Barbara Barron and Cecilia Bamba-Pura (collectively, plaintiffs) appeal from

summary judgment granted to National Mentor Healthcare, LLC and CareMeridian, LLC

(collectively, defendants) on plaintiffs' retaliation-related claims. Plaintiffs contend the trial court erred by sustaining defendants' evidentiary objections without explanation, determining there were no triable issues of material fact as to plaintiffs' claims, and denying plaintiffs' new trial motion. We are not persuaded by plaintiffs' contentions and affirm the judgment.

## BACKGROUND

*Plaintiffs' Discharge*

Defendants operate residential facilities providing subacute and skilled nursing services for individuals suffering from traumatic brain injury, spinal cord injury, and medically complex injuries, such as neuromuscular or congenital anomalies. Bamba-Pura worked at one of defendants' facilities as a certified nursing assistant (CNA) and Barron worked at the same facility as a charge nurse. The two women, along with another CNA, worked the night shift from 7:00 p.m. to 7:00 a.m.

One of the facility's residents complained Bamba-Pura disturbed him by talking loudly on the phone while he was trying to sleep. Janet Matzke, the facility's director of nursing and Bamba-Pura's supervisor, informed Bamba-Pura about the complaint and told her to be more careful and considerate of residents in the future. Approximately 90 minutes after Bamba-Pura learned of the resident's complaint, plaintiffs confronted him about it. According to the resident, plaintiffs surrounded his bed, badgered him with questions, and were unfriendly toward him. He felt pressured by the questions, became angry, and told them to leave his room. He subsequently complained about the incident to Matzke. Plaintiffs deny any confrontation occurred.

2

Matzke met with plaintiffs to inform them of the resident's complaint and issued write-ups to them. The next day, Matzke instructed the facility's assistant director of nursing, Julie Cottam, to interview the resident and find out what happened. During the interview, Cottam learned the resident was afraid of plaintiffs and feared their retaliation. Based on the resident's statements to her, Cottam, a mandated reporter, filed a complaint with the State Department of Public Health (Department).[1] Meanwhile, defendants suspended plaintiffs pending further investigation. Several days later, defendants discharged plaintiffs.[2]

*Barron's Pre-Discharge Complaint History*

Two years before her discharge, Barron complained of patient abuse or suspected patient abuse to defendants. Defendants resolved Barron's complaint two months later.

A little over a year before her discharge, Barron complained about defendants to the defendants' accrediting agency. Several months later, Barron received a write-up for not processing a doctor's orders. Barron admitted the conduct, but believed the write-up

---

[1] The Department subsequently investigated Cottam's report and concluded plaintiffs' conduct toward the resident was improper.

[2] Bamba-Pura's previous employer also discharged her because of a patient abuse allegation.

Following their discharge, plaintiffs filed complaints with the Department of Industrial Relations alleging retaliatory termination in violation of Labor Code section 1102.5. The Department of Industrial Relations investigated the complaints and concluded there was no reasonable cause to believe a violation of Labor Code section 1102.5 occurred.

was intended to be punitive rather than to help her be a better employee. She also believed it was retaliatory because it followed her complaint to the accrediting agency.

A few months after Barron received the write-up, she made additional complaints to both the accrediting agency and the Department. The Department investigated Barron's complaint. As part of its investigation, the Department interviewed all of the facility's employees, including Bamba-Pura. Two months after the interviews, Barron received a write-up for failing to catheterize a resident every three to four hours as directed. She admitted she waited longer than four hours to catheterize the resident because she believed the resident could be catheterized every four to six hours and she did not want to unnecessarily disturb his sleep. After receiving the write-up, Barron filed another complaint with the Department alleging the write-up was retaliatory.

*Bamba-Pura's Pre-Discharge Complaint History*

Unlike Barron, Bamba-Pura never made a complaint to any governmental entity of patient abuse at the facility, never made an internal complaint of patient abuse, and never assisted Barron in making such complaints. Bamba-Pura also never told the defendants she had made such complaints. However, the Department interviewed her along with the other facility employees when the Department investigated one of Barron's complaints.

Additionally, a few months before plaintiffs' discharge, while Bamba-Pura was off work because of an injury, Matzke purportedly remarked the facility had not had any problems with the state or with the accrediting agency during Bamba-Pura's absence. Matzke later purportedly described Bamba-Pura as a liability.

4

*Lawsuit and Summary Judgment*

Two years after their discharge, plaintiffs filed this lawsuit alleging causes of action for wrongful discharge in violation of public policy, preemptive retaliatory termination for disclosing information to a governmental agency in violation of Labor Code section 1102.5, and unfair competition in violation of Business and Professions Code section 17200 et seq. Defendants filed separate motions for summary judgment against each plaintiff. The motions asserted plaintiffs' causes of action failed because plaintiffs could not establish a prima facie case of retaliation or overcome defendants' legitimate, non-retaliatory reasons for discharging them.[3]

The court granted both motions. As to Bamba-Pura, the court found defendants established Bamba-Pura had not engaged in protected activity and her assertion defendants believed she had was speculative. The court also found defendants met their burden of establishing there was no causal connection between Bamba-Pura's cooperation in the Department's investigation and her discharge. As to Barron, the court similarly found defendants had met their burden of establishing there was no causal connection between Barron's various complaints and her discharge. As to both plaintiffs, the court found defendants established they had a legitimate, non-retaliatory basis for discharging plaintiffs and plaintiffs did not provide sufficient evidence to create a triable issue of fact

---

[3] The motions further asserted plaintiffs' claims for punitive damages failed. The court did not reach this issue and it is not before us in this appeal.

5

that the basis was pretextual or that defendants failed to conduct a good faith investigation into the incident leading to their discharge.

## DISCUSSION

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)

## I

### *Evidentiary Objections*

### A

Preliminarily, we address plaintiffs' contention the court erred in sustaining defendants' objections to portions of declarations they submitted in opposition to the summary judgment motions. "Evidence submitted for or against a motion for summary judgment must be admissible if being offered at trial." (*Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 82.) Although the California Supreme Court has not decided the matter (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535), the majority view is that an appellate court reviews the superior court's evidentiary rulings on summary judgment for abuse of

discretion. (*Kincaid v. Kincaid*, *supra*, at pp. 82-83.) If we determine the court improperly excluded any evidence, we consider the evidence in reviewing the correctness of the court's summary judgment ruling. (See, e.g., *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 257 (*Nazir*).)

B

Written objections to evidence submitted in support or opposition to a motion for summary judgment or summary adjudication must be in one of two acceptable formats, be numbered consecutively, and: "(1) Identify the name of the document in which the specific material objected to is located; [¶] (2) State the exhibit, title, page, and line number of the material objected to; [¶] (3) Quote or set forth the objectionable statement or material; and [¶] (4) State the grounds for each objection to that statement or material." (Cal. Rules of Court, rule 3.1354(a) & (b).)[4] In addition, the objections must be submitted with a proposed order that includes "places for the court to indicate whether it has sustained or overruled each objection" as well as "a place for the signature of the judge." (Rule 3.1354(c).)

Here, defendants filed 35 written objections to evidence submitted by Bamba-Pura and 42 written objections to evidence submitted by Barron. Since Bamba-Pura and Barron relied on some of the same evidence, at least 31 of defendants' objections were virtually identical. The objections to Bamba-Pura's evidence spanned five pages, and the objections to Barron's evidence spanned seven pages. The objections quoted the

---

4       Further rule references are to the Rules of Court unless otherwise stated.

challenged evidence and specified the bases for the challenges, including citations to applicable authority. The objections also included places for the court to indicate whether it overruled or sustained them. However, the objections did not include a place for the judge's signature.

As part of its rulings on defendants' motions, the court overruled four of defendants' objections to Bamba-Pura's evidence and 10 of defendants' objections to Barron's evidence. The court sustained defendants' remaining objections, but did not specify which of the asserted bases it relied upon.

C

1

Plaintiffs contend we must treat defendants' objections as waived because the court failed to expressly rule on each objection and instead "provided a blanket ruling specifically overruling 14 of them and then sustaining all the rest." However, a court's failure to expressly rule on evidentiary objections will not result in a waiver of the objections on appeal. (*Reid v. Google*, *Inc*. (2010) 50 Cal.4th 512, 526.) Rather, the court's failure to rule will result in a presumption the court overruled the objections and considered the evidence in ruling on the merits of the summary judgment motion. (*Id.* at p. 535.)

We do not believe the presumption applies here because we do not agree with plaintiffs' assertion the court's ruling amounted to a failure to rule. *Nazir*, *supra*, 178 Cal.App.4th 243, upon which plaintiffs rely, is readily distinguishable. In *Nazir*, the "[d]efendants' reply included 764 objections, set forth in 324 pages." (*Id.* at p. 254.)

8

Although the court did not address the objections in its tentative ruling or at oral argument, its final ruling overruled one of the objections and sustained the remainder. (*Id.* at pp. 254-255.) The appellate court concluded the ruling was too cursory to provide a meaningful basis for review. (*Id.* at p. 255.) The appellate court also concluded the ruling was an abuse of discretion because "there is no way that the trial court could properly have sustained 763 objections ' " 'guided and controlled . . . by fixed legal principles.' " ' " (*Ibid.*) The appellate court reached the latter conclusion because some of the sustained objections did not assert a basis for the objection; some of the sustained objections were to plaintiff's testimony about his relevant personal information; approximately one third of the objections did not quote the challenged evidence in violation of rule 3.1354(b); more than two dozen of the objections were to plaintiff's brief, not to his evidence; and many of the objections were patently frivolous. (*Id.* at pp. 255-257.)

In this case, since most of defendants' objections included multiple bases, the court should have specified which bases it relied upon for those it sustained. Nonetheless, defendants' objections and their bases are sufficiently limited in number and scope that we cannot conclude the court's ruling precludes meaningful appellate review. In addition, while plaintiffs disagree with some of the court's rulings, plaintiffs have not identified any deficiencies comparable to those in *Nazir*, *supra*, 178 Cal.App.4th 243. Thus, we cannot conclude the court's ruling as a whole could not have been guided and controlled by fixed legal principles.

9

Plaintiffs alternatively contend we must treat defendants' objections as waived because the objections failed to include a place for the judge's signature. However, an appellate court will not treat evidentiary objections as waived on procedural grounds when, as here, the record shows the trial court ruled on their merits. (*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1378.)

D

1

Turning to the merits of the objections, plaintiffs contend the court erred in sustaining defendants' 27 objections to statements contained in the declaration of a former coworker. The predominant grounds for the objections were lack of personal knowledge, lack of foundation, hearsay, and irrelevancy. Rather than address specific objections to specific statements, plaintiffs simply contend the court should have overruled the objections because the excluded evidence was relevant and its admission was necessary for them to establish their claims. Such analysis is not sufficient to meet plaintiffs' burden on appeal, as they must establish both error and prejudice. (*Morgan v. Wet Seal, Inc.* (2012) 210 Cal.App.4th 1341, 1369 (*Morgan*); see Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or new trial granted, in any cause, on the ground of . . . improper admission or rejection of evidence, . . . or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]) We cannot satisfy their burden for them. (*Morgan*, *supra*, at p. 1369, citing

*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 ["One cannot simply say the court erred, and leave it up to the appellate court to figure out why"]; *In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1164 ["court is not inclined to act as counsel for . . . any appellant and furnish a legal argument as to how the trial court's rulings in this regard constituted an abuse of discretion."].)

2

Barron also contends the court erred in sustaining defendants' objections to two portions of her declaration. Specifically, defendants made a hearsay objection to Barron's statement that Bamba-Pura told the resident who complained about Bamba-Pura talking on the phone too loudly, "she was sorry for disturbing him." Defendants also made lack of personal knowledge, lack of foundation, and hearsay objections to Barron's statements that the resident angrily and loudly said, "You're going to get fired, B—! You get in too many peoples' faces, B—!"

Barron argues the court should have overruled the hearsay objections because the statements were not offered for their truth. She contends the first statement was offered to rebut the resident's assertion Bamba-Pura confronted him in his room and the second and third statements were offered to show the resident participated in a conspiracy to terminate plaintiffs. She further contends the court should have overruled the lack of personal knowledge and lack of foundation objections to the second and third statements because the resident made the statements in her presence and directed them to her.

Assuming, without deciding, Barron has satisfied her burden of establishing error, she does not explain how exclusion of the evidence prejudiced her. More particularly,

11

she does not explain how the evidence affects her burden and, correspondingly, the outcome of this case. As discussed previously, Barron must show both error and prejudice. (*Morgan*, *supra*, 210 Cal.App.4th at p. 1369.) Because she has not done so, she has not established the court abused its discretion in sustaining defendants' objections to her declaration.

II

*Summary Judgment*

All three of plaintiffs' causes of action are premised on their claim defendants retaliated against them for whistle-blowing activities. The analysis of a retaliation claim is similar to the analysis of other employment-related claims, requiring consideration of whether: (1) plaintiffs established a prima facie case of retaliation; (2) defendants provided a legitimate, nonretaliatory explanation for its actions; and (3) plaintiffs showed this explanation was merely a pretext for the retaliation. (See, e.g., *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1384; accord *McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 468; *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1453.)

Many of the arguments below and on appeal focused on whether plaintiffs can establish a prima facie case of retaliation. We need not address this point because, even if we assume plaintiffs can establish a prima facie case, defendants provided a legitimate, nonretaliatory explanation for discharging plaintiffs and plaintiffs have not met their burden of showing defendants' explanation was pretextual. (See *Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 834 (*Batarse*).)

12

To meet their burden on this point, plaintiffs had to do more than show defendants' explanation was wrong, mistaken or unwise. They had to demonstrate the explanation was so weak, implausible, inconsistent, incoherent, or contradictory a reasonable factfinder could find the explanation unworthy of credence and, consequently, infer defendants did not act for the asserted nonretaliatory reasons. (*Batarse*, *supra*, 209 Cal.App.4th at p. 834; *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 75.)

Evidence defendants may not have conducted a reasonable investigation of the resident's complaint is not sufficient to establish pretext because the record does not show defendants could only discharge plaintiffs for good cause. (*Halvorsen v. Aramark Uniform Services, Inc.* (1998) 65 Cal.App.4th 1383, 1390-1391 [requirement to conduct a reasonable investigation before discharging an employee only applies where there is an agreement not to discharge an employee except for good cause].) Plaintiffs do not contend nor have they produced evidence defendants agreed not to discharge them except for good cause. Absent such an agreement, plaintiffs' employment was presumptively at will. (Lab. Code, § 2922; *Guz*, *supra*, 24 Cal.4th at pp. 335-336.) Where an employer may discharge an employee at will, the employer's " 'motive and lack of care in doing so are, in most cases at least, irrelevant.' [Citations.] Since an employer does not require good cause to terminate an at-will employee, in the normal course of events an employer need not either articulate or substantiate its reasons, except to provide an advance refutation for any inference that the true reason was illegal. Unless at-will employers are to be held to a good-cause standard for termination, no inference of [retaliation] can

13

reasonably be drawn from the mere lack of conclusive evidence of misconduct by the employee."  (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1533.)

Evidence Barron engaged in protected activity as recently as a few months before plaintiffs' discharge is also not sufficient to meet plaintiffs' burden because temporal proximity by itself will not create a triable issue as to pretext after an employer offers a legitimate, nonretaliatory explanation for its actions.  (*Arteaga v. Brink's Inc.* (2008) 163 Cal.App.4th 327, 353, 357.)  Evidence defendants may have made negative remarks in the same time frame to Bamba-Pura and others about engaging protected activity is not sufficient to meet plaintiffs' burden for the same reason.

III

*New Trial Motion*

A

After the court granted summary judgment for defendants, plaintiffs filed a new trial motion in part on the ground of newly discovered evidence.  The evidence included a declaration from a long-term employee of defendants.  The declaration stated plaintiffs were the only employees defendants ever discharged because of a patient abuse claim.  As support for this statement, the employee claimed he was personally aware of a patient abuse complaint against another person who still worked for defendants.  The employee also claimed he was a regular caregiver for the resident who complained of mistreatment by plaintiffs, the resident was difficult, and the resident had falsely complained about mistreatment by the employee.  Although the resident's complaint was never investigated,

14

Matzke gave the employee a write-up for the complaint purportedly "just to make [the resident] happy." After defendants discharged plaintiffs, the resident told the employee that Matzke owed the resident for the resident's help.

Plaintiffs' counsel's declaration in support of the new trial motion stated plaintiffs' counsel interviewed the employee, but did not state when the interview occurred. Then, approximately one month before plaintiffs filed their oppositions to defendants' motions, plaintiffs' counsel met with the employee to outline his statement. After plaintiffs' counsel provided the statement to the employee to sign, the employee stopped communicating with plaintiffs' counsel.

Defendants opposed the new trial motion, arguing the evidence was not "newly-discovered" because it was available to plaintiffs before the summary judgment hearing. The court denied the motion without elaborating on its reasons.

B

Code of Civil Procedure section 657 provides: "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: [¶] . . . [¶] 4. Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." Plaintiffs may properly bring a new trial motion challenging an order granting summary judgment on the basis of newly discovered evidence. (*Hall v. Goodwill Industries of Southern California* (2011) 193 Cal.App.4th 718, 730 (*Hall*).) For entitlement to a new

15

trial on this basis, plaintiffs must establish: (1) the evidence was newly discovered; (2) they exercised reasonable diligence in discovering and producing the evidence; and (3) the evidence was material to their case. (*Id*. at p. 731.) We review a court's order denying a new trial motion for abuse of discretion. (*Id.* at p. 730.)

Here, the record shows the employee at issue was a long-term employee of defendants and a regular caregiver to the resident whose complaint led to plaintiffs' discharge. Thus, plaintiffs inferably knew of him and his potential for being a source of relevant information when they filed their complaint. Although plaintiffs' counsel did not state in his declaration precisely when he learned of the employee's existence, it is nonetheless inferable from the sequence of events described in plaintiffs' counsel's declaration that plaintiffs' counsel knew about the employee and interviewed him well before plaintiffs had to file their oppositions to the summary judgment motions. Plaintiffs, therefore, have not established the evidence at issue was newly discovered or, consequently, that the court abused its discretion in denying their new trial motion.[5]

---

[5] Since plaintiffs did not establish the evidence was newly discovered, we need not consider whether they exercised reasonable diligence in discovering or producing it, or whether it was material to their case. (*Hall*, *supra*, 193 Cal.App.4th at p. 731, fn. 4.)

16

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.


McCONNELL, P. J.

WE CONCUR:


NARES, J.


O'ROURKE, J.