Filed 1/20/21  Munoz v. County of Imperial CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| VERONICA MUÑOZ, | D075805 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU09873) |
| COUNTY OF IMPERIAL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Imperial County, L. Brooks Anderholdt, Judge.  Affirmed.

Scott Trial Lawyers, Timothy A. Scott and Nicolas O. Jimenez for Plaintiff and Appellant.

Walker & Driskill, Steven M. Walker and Mitchell A. Driskill for Defendants and Respondents.

Early one morning at a four-way intersection in El Centro, a pickup truck driven by a county employee collided with a woman riding a bicycle. The injured bicycle rider, Veronica Muñoz, sued the driver and the county for negligence.  At a trial where the driver's statement to responding law enforcement was excluded, the jury found him negligent but determined

Muñoz was contributorily negligent and 75 percent at fault. After trial, the court denied Muñoz's request for cost-of-proof sanctions (Code Civ. Proc., § 2033.420). Appealing the judgment, Muñoz challenges the court's evidentiary ruling excluding the driver's statement to police. As we explain, although this statement should have been admitted as an adoptive admission, its exclusion at trial was harmless. Muñoz also appeals the denial of her motion for cost-of-proof sanctions, but we find no abuse of discretion by the trial court. Accordingly, the judgment and order are affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Julian Lopez worked for the office of the Imperial County agricultural commissioner. Around 6:00 a.m. on April 19, 2016, he was driving a county-owned pickup truck with colleague Ramon Ortega in the passenger seat. On his way to Calexico for work, Lopez drove east on Broadway Street. He came to a complete stop at the intersection of Broadway and 6th Street, which was flanked by stop signs on all sides. It was a clear day, and the sun was up. Nothing obstructed Lopez's view.

At that time, Muñoz was riding her bicycle south on 6th Street, approaching the intersection at Broadway. As Lopez proceeded through the intersection, his truck collided with Muñoz. Police arrived within minutes and took statements from Lopez and Ortega. Paramedics treated Muñoz, who was disoriented and complained of face and leg pain. She was airlifted to a trauma center near Palm Desert.

Muñoz sued Lopez and Imperial County (County) for negligence and negligence per se, alleging Lopez had entered the intersection after Muñoz was already in it and had right-of-way. The case proceeded to a five-day jury trial in early 2019. Muñoz admitted struggling with chronic substance abuse and could not say whether she was sober at the time of the collision. Her

usual practice was to ride her bicycle against the direction of oncoming traffic on the left side of the road and cross the intersection at Broadway via the eastern crosswalk. As she had no memory of the collision itself, Muñoz cross-examined Lopez and Ortega during her case-in-chief (Evid. Code, § 776, subd. (a)).[1] Both testified that Lopez looked both ways and saw no one on the road before proceeding through the intersection.[2]

Several witnesses described Muñoz's lingering health problems since the crash. A neurosurgeon attributed continued symptoms a year later to a traumatic brain injury, rejecting substance abuse as the cause. At the close of Muñoz's case, the court denied a defense nonsuit motion but indicated her causation showing was tenuous.

Defendants examined two expert witnesses in their case-in-chief. A medical expert disagreed with the neurosurgeon's diagnosis and suggested Muñoz's memory problems could be explained by her chronic drug use. An accident reconstruction expert considered rates of speed and the location of impact to conclude that Muñoz most likely barreled into the intersection after Lopez had already entered it. The expert believed Lopez could not have stopped in time, but given her slower rate of speed, Muñoz might have been able to avoid it.

Liability turned largely on who had right-of-way. Plaintiff's counsel argued in closing that Muñoz entered the intersection first and was in the crosswalk when an inattentive Lopez "t-boned her, essentially." Although Lopez claimed to have looked each way, it was obvious that Muñoz "didn't

---

[1]    Except as otherwise specified, further statutory references are to the Evidence Code.

[2]    To avoid repetition, we discuss the testimony given by Lopez and Ortega, as well as evidence excluded by the trial court, in our discussion.

3

come out of nowhere." Defense counsel disagreed. Relying on percipient accounts by Lopez and Ortega, as well as testimony by the accident reconstruction expert, he suggested Muñoz shot through the intersection after Lopez had already entered it.

Rendering its verdict, the jury found Lopez acted negligently, determined his negligence was a substantial factor in causing harm, and found he was a County employee acting within the scope of his employment when the collision occurred. But it also found Muñoz to be contributorily negligent, placing her 75 percent at fault. It accordingly awarded Muñoz only one-fourth of the $120,000 in total damages.

Muñoz filed a motion for a new trial and requested cost-of-proof sanctions related to the jury's negligence and causation findings (Code Civ. Proc., § 2033.420). The court considered both motions at an April 2019 hearing and denied them. Based on the court's directive, defendants consented to an additur for past pain and suffering, resulting in a total judgment of $36,875 in Muñoz's favor.

DISCUSSION

Muñoz appeals the judgment, arguing the trial court prejudicially erred in excluding an adoptive admission made by Lopez. She also challenges the denial of her request for cost-of-proof sanctions. We address these arguments in turn, rejecting them both.

1. *Exclusion of Lopez's Adoptive Admission*

Muñoz argues the court erred in excluding as hearsay a statement attributed to Lopez in the accident report prepared by a member of the El Centro Police Department. As we explain, although we agree the statement was admissible as an adoptive admission, any error in excluding it was harmless.

4

a.    *Additional Background*

While examining Lopez at trial, plaintiff's counsel sought to introduce his statement to officers who responded to the scene of the collision. The trial court excluded this evidence during an unreported sidebar. Understanding Muñoz's contention requires additional background as to the claimed adoptive admission, Lopez's trial testimony, and a discussion of the evidentiary ruling in Muñoz's new trial motion.

Officers arrived within minutes of the collision and interviewed both Lopez and Ortega. A report prepared from that investigation attributed the following statement to Lopez:

> "[Lopez] was standing on the south sidewalk, 500 block of Broadway Street. [Lopez] was identified with his California driver's license. [Lopez] related to me the following: [Lopez] stated that he was driving V[ehicle]-1, traveling eastbound in the number one lane, 600 block of Broadway Street. [Lopez] stopped for the stop sign at the intersection of South Sixth Street Avenue. [Lopez] proceeded eastbound into the intersection and saw [Muñoz]. [Muñoz] was riding V[ehicle]-2, traveling southbound in the east crosswalk, at the intersection of Broadway Street and South Sixth Street. [Lopez] swerved V[ehicle]-1 to the right in attempt to avoid colliding into V[ehicle]-2. V[ehicle]-1 collided into V[ehicle]-2."

During his deposition a year later, Lopez was asked to review the police report and indicated that the statement attributed to him in it was "a pretty accurate summary of what happened."[3]

At trial, Lopez testified he came to a complete stop at the intersection, seeing no one to the left or right, and no vehicles approaching from ahead. There appeared to be no one on the road in any direction of travel. The two

---

[3]    Lopez's deposition testimony was presented to the court on Muñoz's new trial motion.

crosswalks in front of him were clear, and it did not seem like anyone was about to enter either. At that point, Lopez stated he accelerated through the intersection at 10 to 15 miles per hour. He and Ortega were likely engaging in casual conversation at the time, but nothing was distracting him from the road. As his truck proceeded past the eastern crosswalk, Lopez saw movement and swerved right before colliding with something on the front left side of his vehicle. Only after stepping out and seeing a woman with a bicycle on the ground did he piece together what happened. He testified that he never actually saw Muñoz before the collision and never saw her in the crosswalk.

Ortega offered a similar account. By habit, Ortega looked left and right from the passenger seat and saw nobody. But once they crossed the intersection, he felt impact. Ortega asked Lopez what happened, and Lopez replied, "I don't know." They immediately stopped and called for assistance. When they stepped outside, it was clear that the pickup truck had collided with a person.

Challenging this version of events, plaintiff's counsel on cross-examination attempted to show that Lopez had given police officers a slightly different account right after the crash. Lopez stated he did not recall telling the officer that he saw Muñoz riding her bicycle southbound in the eastern crosswalk before the collision occurred. Counsel attempted to refresh his recollection with the police report. Reviewing it, Lopez again denied telling police that he had seen Muñoz traveling in the crosswalk; he merely indicated that Muñoz must have been traveling south on 6th Street. Lopez agreed that at his deposition, he described the statement contained in the police report as "a pretty accurate summary of what happened."

6

On further questioning from defense counsel, Lopez clarified that he saw Muñoz only a split second before the collision and denied ever seeing her in the eastern crosswalk. He recalled that at his deposition, he was asked to draw a circle on an aerial map to indicate where the collision occurred. Consistent with his testimony at trial, he had drawn the circle to show that the collision occurred east of the eastern crosswalk. Lopez denied telling the police officer anything different. Resuming cross-examination, plaintiff's counsel established that Lopez drew the circle at his deposition, after being sued and long after speaking with officers at the scene.

Ultimately the statement attributed to Lopez in the police report was never admitted as evidence or presented to the jury. While questions posed by both sides' counsel hinted at a potential discrepancy between it and Lopez's trial testimony, the court instructed the jury that only witness answers, and not attorney questions, were evidence.

Following the jury's verdict, Muñoz moved for a new trial. (Code Civ. Proc., § 657.) As pertinent here, she challenged the trial court's exclusion of the statement attributed to Lopez in the police report. (§ 1221.) Attaching deposition excerpts, Muñoz argued the statement was admissible against Lopez as an adoptive admission. Had it been admitted, she claimed it would have established that Muñoz had right-of-way; impeached Lopez's testimony; and rebutted the timeline given by the defense's accident reconstruction expert.

Opposing the new trial motion, defendants claimed Lopez never adopted the statement in the police report. Although he said at deposition that it was a " 'pretty accurate summary of what happened,' " he was never asked to adopt the specific sentence concerning Muñoz's presence in the crosswalk. Elsewhere at his deposition, Lopez had testified that the collision

7

occurred *past* the crosswalk. Moreover, defendants claimed Muñoz suffered no prejudice because she presented no *evidence* she entered the intersection before Lopez or had right-of-way.

At the hearing, the court gave a tentative ruling denying the new trial motion. It noted that despite its exclusion of the police report during an unreported sidebar, both parties asked Lopez about his statement to police. "And so the information in the police report was provided to the jury. One way or the other, it came in." The court then invited argument from the parties. When Muñoz questioned the extent to which the information came in, the court stated it had also considered Muñoz's failure to lay foundation for the police report at trial. To this, Muñoz replied that the officer who authored the report had retired, and his testimony was in any event unnecessary given Lopez's adoption of the hearsay statement as his own.

Defense counsel urged the court to adopt its tentative. He recalled the police report being discussed on "several occasions"—first in chambers before trial began and again during trial, once it became clear plaintiff's questions would refer to it. As he remembered the court's ruling, it was clear that Muñoz could ask Lopez, " 'Well, didn't you tell the police this?' " If Lopez denied it, Muñoz could bring in an impeaching witness. Muñoz was aware that to use the police report, she would need to lay foundation for its use; "And that simply didn't happen." Aside from foundational issues, defense counsel claimed Lopez never adopted the statement in the police report as his own. Earlier in the deposition, Lopez "testified repeatedly and clearly that the collision took place just past the crosswalk." Thus, it was incumbent upon Muñoz to establish that Lopez manifested agreement with the specific line in the police report's statement suggesting he saw her traveling in the crosswalk before the collision occurred.

8

The court adopted its tentative ruling. It reasoned that there was ample evidence apart from the police report for the jury to determine liability. Muñoz had no memory of the collision, and testimony from Lopez, Ortega, and the defense expert suggested Lopez had glimpsed Muñoz only at the last second as she rode her bicycle southbound. Further, in the court's view, "it was apparent to all of us here that what Mr. Lopez had stated to the police at the time was different than what he was stating in the courtroom."

b. *Legal Principles*

Hearsay evidence is generally inadmissible, absent a recognized exception to the rule. (§ 1200.) Direct and adoptive admissions by a party opponent offer two such exceptions. Section 1220 allows the admission of an out-of-court statement by a party to the action. Section 1221 applies where a party adopts *another person's* declaration as his or her own and applies to a statement "of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth." Adoptive admissions are permitted on the theory that " 'the hearsay declaration is in effect repeated by the party; his conduct is intended by him to express the same proposition as that stated by the declarant.' " (6 Witkin, Cal. Evidence (5th ed. 2018) Hearsay, § 103; see *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 326.)

" 'In determining whether a statement is admissible as an adoptive admission, a trial court must first decide whether there is evidence sufficient to sustain a finding that: (a) the defendant heard and understood the statement under circumstances that normally would call for a response; and (b) by words or conduct, the defendant adopted the statement as true.' " (*People v. Charles* (2015) 61 Cal.4th 308, 322−323.) "For the adoptive admission exception to apply, it is sufficient that the evidence supports a

9

reasonable inference that an accusatory statement was made under circumstances affording a fair opportunity to deny the accusation; whether defendant's conduct *actually* constituted an adoptive admission becomes a question for the jury to decide." (*Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 83 (*Kincaid*), italics added; see *People v. Richards* (1976) 17 Cal.3d 614, 618 ["Whether defendant's response actually constituted an adoptive admission was a question for the jury to decide."].)

Unless it turns on a question of law, we generally review a ruling on the admissibility of evidence for abuse of discretion. (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476 (*Zhou*).) A trial court abuses its discretion in excluding evidence if, "in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason." (*Coyne v. De Leo* (2018) 26 Cal.App.5th 801, 814.) Where error is found, it "is grounds for reversing a judgment only if the party appealing demonstrates a 'miscarriage of justice'—that is, that a different result would have been probable if the error had not occurred." (*Zhou,* at p. 1480; *San Diego Gas & Elec. Co. v. Schmidt* (2014) 228 Cal.App.4th 1280, 1301−1302; see Evid. Code, § 354; Cal. Const., art. VI, § 13.)

c.    *The statement was admissible as an adoptive admission.*

Muñoz argues Lopez adopted the statement attributed to him in the police report at his deposition, rendering that statement admissible under section 1221. She disputes the trial court's finding that the information was otherwise before the jury, noting that Lopez alone was shown the report to refresh his recollection, and he denied making the specified statement to police.

At the outset, the fact the evidentiary ruling occurred at an unreported sidebar complicates our review. "Before an appellate court can

knowledgeably rule upon an evidentiary issue presented, it must have an adequate record before it to determine if an error was made." (*In re Mark C.* (1992) 7 Cal.App.4th 433, 445; see *Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1433 [party claiming evidentiary error must "develop the fullest possible evidentiary record *before* seeking review"].) Nevertheless, defendants acknowledged the prior ruling at a hearing that was reported, and they do not argue the appellate record is inadequate to consider Muñoz's claim. Drawing from other parts of the record (see *Medical Operations Mgt., Inc. v. National Health Labs., Inc.* (1986) 176 Cal.App.3d 886, 890, fn. 3), we therefore proceed with the understanding that Muñoz sought to admit the statement attributed to Lopez in the police report as an adoptive admission, and the trial court denied her request.[4]

Turning to the merits, Muñoz is correct that the proffered statement was admissible as an adoptive admission. Excerpts of Lopez's deposition were submitted with Muñoz's new trial motion. Plaintiff's counsel focused heavily on statements in the police report during Lopez's deposition. Reading the last line that Lopez swerved to avoid collision, he asked whether Lopez recalled events the same way. Lopez said he did. Counsel then asked whether "the rest of the officer's statement"—meaning the statement attributed to Lopez in the report—was accurate. Lopez answered, "Yes." A couple of minutes later, plaintiff's counsel asked Lopez if what he told officers was reflected in the police report; again, Lopez said "Yes." Following

---

[4]    As was clear to the trial court, Muñoz never sought to admit the entire police accident report. She sought admission of the paragraph in the report that purports to reflect Lopez's statement to the police officer who arrived at the scene. Had the evidence been permitted at trial, it is only this paragraph, and not the entire report, that would have been read into the record or otherwise presented to the jury. We therefore disregard defendants' argument that police accident reports are generally inadmissible.

11

up, counsel inquired if anything was left out "in terms of any details you might have provided them that they might have forgotten to write in there, or is that a pretty accurate summary of what you told them?" Lopez replied, "I'd say that's a pretty accurate summary of what happened." Lopez was given a chance to review his deposition transcript and did not make any changes.

This record supports a reasonable finding that Lopez manifested his intent to adopt the statement as his own. He was asked in several different ways whether it was complete and reflected what he told officers, but he raised no concerns. It is true, as defendants suggest, that Lopez was not specifically asked whether he saw Muñoz in the crosswalk before the collision. And Lopez testified earlier at deposition that the accident occurred *past* the crosswalk. But these facts merely suggest ambiguity as to whether he meant to adopt every sentence in the statement in describing it as "pretty accurate." That ambiguity was the jury's to resolve. (See *Kincaid, supra,* 197 Cal.App.4th at p. 85 [in wrongful death suit against plaintiff's former husband alleging that his sexual abuse and torture caused her daughter's suicide, ex-husband's prior denials of abuse were merely "a factor for the jury to consider" in evaluating his later adoptive admission].)

As Muñoz suggests, *In re Automobile Antitrust Cases I & II* (2016) 1 Cal.App.5th 127 is instructive. Plaintiffs there sued various auto manufacturers and trade associations, alleging a conspiracy to restrict exports of lower-priced Canadian vehicles into the U.S. market. (*Id.* at pp. 132−133.) Ford moved for summary judgment, arguing the plaintiffs could not prove a conspiracy. (*Id.* at p. 137.) The trial court sustained Ford's hearsay objection to minutes from a trade association's " 'Export Sales Meeting' " that was attended by representatives of several manufacturers.

(*Id.* at p. 148.)  The appellate court reversed, deeming the minutes "a 'textbook example' " of an adoptive admission.  (*Id.* at p. 149.)  They were drafted by an employee of the trade association who attended the meeting, and forwarded to an executive at Ford Canada for review and comment.  The executive made only minor revisions and "stated that he felt the minutes 'generally captured the sense of what went on at the meeting' and were 'pretty accurate.' " (*Id.* at p. 149.)  As the court reasoned, "by engaging in this review and revision process, [the executive] clearly manifested his belief in the accuracy of the meeting minutes.  Presumably, had he seen any errors, he would have corrected them." (*Ibid.*)

Similarly, Lopez was given a chance to review the police accident report.  He was asked to comment on the statement attributed to him.  By stating it reflected a "pretty accurate summary of what happened," Lopez manifested his belief in the statement's accuracy.  It is immaterial that he "was not involved in the preparation, review, or editing of the Police Report before it was finalized or published," as defendants suggest.  He heard and understood the statement under circumstances that plainly called for a response and adopted the statement as true.  No more is required.  (See *People v. Charles, supra,* 61 Cal.4th at pp. 322–323.)  Accordingly, the proffered statement was admissible against Lopez as an adoptive admission, and it was error to exclude it.

      d.    *The error was harmless.*

For reversal to be warranted, Muñoz must establish that there was a reasonable probability of a more favorable verdict absent the error.  (*Zhou, supra,* 157 Cal.App.4th at p. 1480.)  A "reasonable probability for these purposes does not mean an absolute probability; the likelihood that the error affected the outcome need not be greater than the likelihood that it did not."

13

(*Sabato v. Brooks* (2015) 242 Cal.App.4th 715, 725.)  Here, the jury found in favor of Muñoz on the question of Lopez's negligence.  And as we explain, although the adoptive admission is relevant to the contextual question of where the collision occurred, given Lopez's otherwise consistent deposition testimony it would have added little to the evidence already before the jury on that question.  In particular, there is no reasonable likelihood that receipt of Lopez's statement would cause the jury to evaluate the question of comparative negligence differently.  The trial court's error in excluding Lopez's adoptive admission was therefore harmless.

Muñoz's entire argument focuses on these four lines of the Lopez's statement to police:

> "[Lopez] proceeded eastbound into the intersection and saw [Muñoz].  [Muñoz] was riding [a bicycle], traveling southbound in the east crosswalk, at the intersection of Broadway Street and South Sixth Street.  [Lopez] swerved [his pickup truck] to the right in attempt to avoid colliding into [the bicycle].  [The truck] collided into [the bicycle]."

It is undisputed that the key issues before the jury were who entered the intersection first and what each should have seen.  Muñoz claims the four quoted lines would have established that Lopez saw Muñoz before the collision; that Muñoz was riding her bicycle in the crosswalk when Lopez struck her; that Muñoz was already in the crosswalk with the right-of-way at the time Lopez collided with her; and that Lopez was the one who collided with Muñoz, and not the other way around.  She further claims the evidence would have impeached Lopez's testimony as to when and where he saw Muñoz, as well as undercut the accident reconstruction expert's timeline of events.  All of this, in her view, makes it reasonably probable that the jury would have evaluated her comparative fault differently and increased her ultimate award.

14

We disagree.  Nothing in the adoptive admission establishes who was in the intersection *first*.  Lopez testified at trial that he did not see Muñoz at any point before entering the intersection.  He instead claimed to see her a split second before impact and pieced together what happened after the fact.  That testimony is entirely consistent with his admission that he "proceeded eastbound into the intersection and saw [Muñoz]."  In other words, the adoptive admission would not challenge Lopez's trial testimony that he first saw Muñoz a mere second before the collision.  Muñoz's strongest argument was the rhetorical one raised by her counsel at closing—she had to have come from *somewhere*, and Lopez did not see her because he was admittedly conversing with Ortega.

Lopez's testimony did differ in one factual respect from his admission—regarding Muñoz's location at the time of the collision.  Lopez told police that Muñoz was riding her bicycle "southbound in the east crosswalk."  At trial, he denied ever seeing Muñoz *in* the crosswalk and claimed the collision happened *past* the crosswalk.  But this discrepancy has little bearing on the question of comparative fault.  As the trial court commented during the conference on jury instructions, the real question was not Muñoz's precise location on the road but rather "who got there first" to have right-of-way.  Muñoz was not a pedestrian walking across the street.  She was a cyclist riding through the intersection on the wrong side of the road without stopping at a stop sign.  Significantly, the jury was instructed on the right-of-way statute (Veh. Code, § 21800, subd. (a)), but not on rules governing crosswalks.  Impeaching Lopez on this collateral matter would not reasonably have led the jury to find that Muñoz was less responsible.

Moreover, Lopez merely described the statement as being "pretty accurate."  Had the adoptive admission been introduced at trial, defense

15

counsel could have explored what that meant. As the deposition excerpts in our record reveal, shortly before Lopez adopted the police statement as "pretty accurate," he drew a circle to show that the collision happened *past* the crosswalk. Defense counsel indeed focused on that aspect of his deposition testimony at trial and elicited that Lopez had shown the officer exactly where the collision occurred. When plaintiff's counsel pressed Lopez to answer why the police report placed Muñoz in the crosswalk, Lopez had a plausible contextual answer: he had been telling the officer that Muñoz must have been traveling north to south, not that she was in the crosswalk. It was the jury's role to decide what Lopez meant when he described the statement as "pretty accurate"—i.e., whether he adopted it in whole or only in large part. (See *Kincaid, supra,* 197 Cal.App.4th at p. 83.) Based on testimony given at trial and evidence that *could have been* elicited based on the deposition testimony had the admission come in, a jury would likely conclude that Lopez did not believe that the police report's description of Muñoz's position *in the crosswalk* was "pretty accurate."

Given Lopez's consistent testimony at his deposition that the accident took place outside the crosswalk, and the fact that Muñoz's precise whereabouts were collateral to the primary issues of who entered the intersection first and what they should have seen, there is no reasonable likelihood that admitting the evidence would have produced a larger verdict.

2.    *Denial of Cost-of-Proof Sanctions*

Muñoz challenges the court's denial of her request for cost-of-proof sanctions on issues of negligence and legal causation. As we explain, the court did not abuse its discretion.

16

a.   *Additional Background*

As noted, the jury found Lopez negligent and concluded his negligence was a substantial factor in causing Muñoz's harm.  It reduced Muñoz's recovery, however, finding her 75 percent contributorily negligent.  Following the verdict, Muñoz filed a motion under Code of Civil Procedure section 2033.420 seeking cost-of-proof sanctions related to her proof of negligence and legal causation.  Attached to her motion were discovery requests she propounded on the County in August 2017 and the County's responses a month later.  Specifically, Muñoz asked the County to "Admit that the VEHICLE Defendant LOPEZ was driving during the INCIDENT struck the PLAINTIFF during the incident" (request No. 3).  The County denied request No. 3 on the ground that it lacked "sufficient information or belief as to the movement of either vehicle or biomechanic [*sic*] of the accident at the time of the collision."  Muñoz also asked the County to "Admit that Defendant LOPEZ'[s] conduct during the INCIDENT was NEGLIGENT" (request No. 4).  The County denied that request as well, stating it "call[ed] for a legal conclusion."

In her motion, Muñoz argued the County lacked reasonable grounds at the time it responded to believe it would prevail on the negligence or causation issues encompassed in requests No. 3 and No. 4.  At that time, the County would have seen the police accident report, which blamed Lopez for the collision and indicated he violated the right-of-way statute (Veh. Code,

17

§ 21800, subd. (a)).[5] It would also have been aware of the dent in Lopez's work vehicle. Defendants' accident reconstruction expert was not hired until the eve of trial. Muñoz asserted that although the jury found her to be contributorily negligent, the County had no reasonable basis to deny its own negligence.

Defendants opposed the motion, arguing they had a reasonable and good faith belief at the time they denied the requests that Lopez was not negligent and that *Muñoz* had collided with him. In support of their position, they submitted a declaration by attorney Mitchell Driskill, stating in relevant part:

> "2. In September 2017 Defendants were aware of only two witnesses to the accident, Julian Lopez and Ramon Ortega. Both testified that they had proceeded through the intersection of Broadway and North Sixth Street after stopping at the stop sign and after making sure the intersection was clear of vehicles, pedestrians, and bicyclists. Both testified that the collision occurred after they cleared the intersection and both crosswalks. Lopez testified that he only saw something out of the corner of his eye an instant before the collision took place. Both Lopez and Ortega identified the same location as the place of the collision - East of the eastern crosswalk. There was no evidence that Lopez violated any statute, ordinance, or regulation or was the legal cause of Plaintiff's injuries.

> "3. These facts, the geography of the intersection, and the time of the accident led Defendant's [*sic*] to the following preliminary inferences and conclusions:

---

[5] The police accident report was attached as the final exhibit to Muñoz's cost-of-proof motion. Summarizing what occurred, the report stated that Lopez proceeded through the intersection after Munoz was already in it and did not see her in time to avoid the collision. It determined that Lopez "caused this collision" by failing to "yield the right-of-way to any vehicle which has entered the intersection from a different highway," as required by Vehicle Code section 21800, subdivision (a).

18

"a.  That Plaintiff had likely been traveling southbound on North Sixth Street against traffic or on the sidewalk;

"b.  That as Plaintiff approached the intersection of North Sixth Street and Broadway she was either inattentive or impaired;

"c.  That if Plaintiff had been paying attention to traffic at all, she would have been paying attention to traffic coming from the East on Broadway, not traffic coming from the West, since the westbound traffic would pose the most immediate and direct threat to her given her path of travel;

"d. That Plaintiff likely darted into the intersection at a speed that made it unlikely for Lopez to see her or avoid her before the accident.

"e. That Plaintiff likely ran into the path of Defendant's truck, striking the truck on the side of the front quarter-panel, not the front bumper. . . .

"4.  In September 2017 we had not yet retained expert witnesses or determined what experts were required."

At the hearing, the court indicated its tentative to deny cost-of-proof sanctions.  Noting that liability was disputed at trial, it highlighted trial testimony by the accident reconstruction expert and the jury's finding of contributory negligence.  In the court's view, deposition testimony by Lopez also supported the denials.  The court indicated the nonsuit motion at the close of plaintiff's case "was about as close a call as I've had in a trial," though ultimately there was just enough evidence to warrant a jury finding.  Both parties submitted on the tentative, and the court adopted it as its ruling.

     b.    *Legal Principles*

During discovery, a party may request an admission from the other side regarding an issue in controversy.  (Code Civ. Proc., § 2033.010.)  Requests for admission serve to narrow the issues for trial.  (*Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 752 (*Bloxham*).)  " 'For this reason, the

19

fact that the request is for the admission of a controversial matter, or one involving complex facts, or calls for an opinion, is of no moment.' " (*Ibid.*) "[A] request may ask a party for a legal conclusion." (*Grace v. Mansourian* (2015) 240 Cal.App.4th 523, 529 (*Grace*).) Because a responding party has a duty to make reasonable investigation of the facts, requests for admission can seek information outside the responding party's personal knowledge. (*Ibid.*)

A failure to admit opens the door to cost-of-proof sanctions. "If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so . . . , and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees." (Code Civ. Proc., § 2033.420, subd. (a).) The statute *requires* an award of fees and costs unless: (1) an objection to the request was sustained or a response to it was waived, (2) the admission was of no substantial importance, (3) the responding party reasonably believed it would prevail on the matter, or (4) there was other good reason not to admit. (*Id.*, subd. (b).) Whether these exceptions apply is left to the trial court's sound discretion, and we do not disturb its ruling denying cost-of-proof sanctions unless it exceeds the bounds of reason. (*Bloxham, supra,* 228 Cal.App.4th at p. 753.) "It is a deferential standard of review that requires us to uphold the trial court's determination, even if we disagree with it, so long as it is reasonable." (*Ibid.*)

c.  *No abuse of discretion occurred.*

Muñoz argues the court applied improper criteria in denying her request for cost-of-proof sanctions. Criticizing the court for focusing on the evidence presented at trial, she argues the relevant inquiry is instead

20

whether the denials were reasonable when made. According to Muñoz, there was *no* evidence to support a reasonable belief in 2017 that Lopez was not negligent or that his negligence did not cause the accident. Muñoz points to the fact that Lopez had yet to be deposed and the police report determined *he* had caused the collision by failing to yield the right-of-way. In response, defendants argue they reasonably believed they would prevail on issues of negligence and causation. They suggest cost-of-proof sanctions may be denied so long as they reasonably entertained a good faith—albeit ultimately mistaken—belief that they would prevail. (See, e.g., *Miller v. American Greetings Corp.* (2008) 161 Cal.App.4th 1055, 1066.)

Defendants have the better argument. Although worded imprecisely, the attorney declaration submitted with their opposition brief reflects that the County formed preliminary impressions of the case by September 2017 based on accounts given by Lopez and Ortega. These preliminary accounts were *consistent* with later testimony given at trial. Based on these accounts, the time of day, and the location of the incident, defendants believed Lopez was *not* negligent and was not the legal cause of Muñoz's injuries. These denials corresponded with defendants' answer, filed two months before, pleading affirmative defenses that Muñoz "acted as to proximately cause and contribute to the happening of the accident complained of," and that defendants were not the legal cause of her damages.

Defendants' proffer amounted to more than mere "hope or a roll of the dice." (*Grace, supra,* 240 Cal.App.4th at p. 532.) On our record, the trial court could fairly conclude that the County had a good faith belief it would prevail at trial on negligence and causation issues at the time it refused to admit that Lopez was negligent or the legal cause of Muñoz's harm. (See *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1277.) Cases in

21

which the defendant proffered *no* contemporaneous evidence to justify its denial are inapposite.  (See *Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 638 [the *only* reasonable inference that could be drawn from counsel's actions was that defendant "had no reasonable belief it could prevail on the causation and defect issues"]; *Brooks v. Am. Broad. Co.* (1986) 179 Cal.App.3d 500, 511 [it is not enough for the responding party to " 'hotly contest' " the issue; "there must be some reasonable basis for contesting the issue in question before sanctions can be avoided"].)

As Muñoz points out, Lopez and Ortega had yet to testify when the County denied requests No. 3 and No. 4.  And she is correct that the trial court focused on what happened at trial in denying her motion.  But as we read it, the court was relying on events at trial to implicitly find it *reasonable* for defendants to believe they would ultimately prevail on contested issues of negligence and legal causation.  (See *Grace, supra,* 240 Cal.App.4th at p. 531 ["[T]he mere fact defendants presented evidence at trial is not an automatic justification for denial of the requests.  Rather, the issue is whether, *in light of that evidence*, defendants could reasonably believe they would prevail." (Italics added.)].)  Granting due deference to the trial court, no abuse of discretion occurred.

## DISPOSITION

The judgment and order denying cost-of-proof sanctions are affirmed. Defendants are entitled to their appellate costs.


DATO, J.

WE CONCUR:


IRION, Acting P. J.


GUERRERO, J.